1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| VAL J. WALDON, | ) | Civil No. 12cv1323 AJB (NLS) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **FOR ORDER:** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | **(1) GRANTING PLAINTIFF'S MOTION** |
| Social Security, | ) | **FOR SUMMARY JUDGMENT AND** |
| | ) | **FOR REVERSAL AND OR REMAND** |
| Defendant. | ) | **[Doc. No. 16]; and** |
| | | |
| | | **(2) DENYING DEFENDANT'S CROSS** |
| | | **MOTION FOR SUMMARY** |
| | | **JUDGMENT [Doc. No. 18].** |

18          Plaintiff Val Waldon brings this action under the Social Security Act, 42 U.S.C. § 405(g),

19   seeking judicial review of the final decision of the Commissioner of the Social Security Administration

20   ("Commissioner" or "Defendant") denying his claim for social security benefits.  This case was referred

21   for a report and recommendation on the parties' cross motions for summary judgment.  See 28 U.S.C. §

22   636(b)(1)(B).  After considering the moving papers, the administrative record, and the applicable law,

23   the court **RECOMMENDS** that Plaintiff's motion for summary judgment and for reversal and or

24   remand be **GRANTED** and the case be remanded for further administrative proceedings, and that

25   Defendant's cross motion for summary judgment be **DENIED**.

26   / / /

27   / / /

28   / / /

# I.   FACTUAL BACKGROUND

## A.   Procedural History.

Waldon filed applications for a period of disability and social security disability insurance benefits (SSD) on August 27, 2008.  Administrative Record (AR) 174-184.  He did not apply for supplemental security income (SSI).  *Id.*  Waldon alleges his condition rendered him unable to work on March 1, 1997.  *Id.*  The request was denied initially on December 17, 2008, and on reconsideration on March 4, 2009.  AR 21.  On March 17, 2009 Waldon filed a written request for a hearing.  *Id.*

An Administrative Law Judge (ALJ) held hearings on April 12 and August 30, 2010.  AR 59-67, 34-58.  Waldon testified at the first hearing.  AR 59-67.  Waldon, medical expert Arvin Klein, and vocational expert John Kilcher testified at the second hearing.  AR 34-58.  Based on the testimony and documentary evidence the ALJ issued a decision denying Waldon's application for benefits.  AR 18-33.  Waldon then filed an administrative request to review the decision.  AR 16-17.  The Appeals Council denied the request for review, and the ALJ's decision became final.  AR 1-6.

Waldon filed this complaint for judicial review of Defendant's final decision.  He argues that the ALJ committed reversible error by giving improper consideration to the treating physician's opinion and to Waldon's testimony.  He asks that this court reverse and remand for further administrative proceedings.

## B.   Documentary Medical Evidence.

### 1.   Examining Physicians.

Waldon has a history of insulin dependent diabetes mellitus, hypertension, depression, post traumatic stress disorder, substance, alcohol and Vicoden abuse, asthma, coronary artery disease, myocardial infarction, peripheral neuropathy, cerebrovascular accident in 1996 with right lower extremity weakness, gastroesophageal reflux disease, and hypoglycemia.  AR 23, 240-286, 380-851, 853-896.  Those diagnoses are based on the following reports.

Aparna Kambhampati, M.D., reported Plaintiff was admitted to the hospital on January 25, 1998, for a suicide attempt.  AR 23, 869-870.  His urine tested positive for benzodiazepines, alcohol, and cocaine.  *Id.*  Waldon was discharged on January 31, 1998, with a diagnosis of depression, polysubstance abuse, non-insulin dependent diabetes mellitus, hypertension, and purified protein

derivative.  *Id.*

Dennis J. Dicampli, M.D., reported that Waldon was admitted to the hospital on June 20, 1998, for chest pain after being arrested for an outstanding warrant.  AR 23, 271.  Waldon had a two year history of insulin dependent diabetes mellitus and 18 year history of diabetes.  *Id.*  He reported a cerebrovascular accident in 1996 with residual right lower extremity weakness, myocardial infarction in 1986 with angioplasty, tuberculosis status post treatment, increased cholesterol, hypertension for 10 years, gastroesophageal reflux, and ulnar osteotomy secondary to fracture.  AR 24.  Waldon was admitted and placed on heparin.  AR 271.  He was scheduled for an angiogram but left the hospital against the advice of doctors, without having had the angiogram.  *Id.*  When he left on June 23, 1998, Waldon had a diagnosis of probable coronary artery disease, diabetes mellitus and hypertension.  AR 24.

According to Linda Gonzales, Ph.D., on February 27, 2001 Waldon reported that he had been depressed since he returned from Vietnam in 1977.  AR 24, 813-817.  He was alcohol and cocaine dependent and attempted suicide three times.  *Id.*  He had been traumatized by his experiences of being shot and stabbed and was in two serious car accidents.  *Id.*  He attended an outpatient rehabilitation center in 1997 for his addictions.  *Id.*  Waldon was diagnosed with major depression, posttraumatic stress disorder, and alcohol and cocaine dependence in remission.  AR 86.

### 2.     Dr. Carol Sprague–Treating Physician.

Dr. Sprague from the Veterans Affairs Medical Center treated Plaintiff from December 2000 through March 2009.  AR 289-348; 380-852.  She diagnosed him as suffering from diabetes with significant peripheral neuropathy in his feet, significant numbness in his thighs with severe pain (meralgia paresthetica), distant history of a stroke with chronic right lower extremity numbness and mild weakness, high blood pressure, high cholesterol, obstructive sleep apnea, obesity, depression and PTSD symptoms.  AR 852.  She noted he takes the following medications: metformin, insulin, simvastatin, metoprolol, losartan, doxazosin, pantoprazole, testosterone, duloxetine, amitriptyline, trazodone and methadone.  *Id.*

On April 8, 2010, Dr. Sprague described Waldon's functional impairments as follows:

/ / /

/ / /

1
2
3

> Over the time that I treated Mr. Waldon he had significant functional impairment. This worsened over the time that I treated him. He was disabled when I first evaluated him in 2000, and became increasingly disabled over time. His symptoms include significant depression and anhedonia, severe neuropathy and pain which limit his endurance and

4
5
6
7
8
9

> ability to do many activities. Mr. Waldon has marked limitation in his concentration due to pain and fatigue and marked impairment in his social functioning. He would not be able to work in even a sedentary job and it is very likely his medical and mental functioning would likely worsen if he was in a competitive work environment. Although he is able to perform his activities of daily living, he would be unable to work in any capacity due to his medical and medication side effects. In my opinion he was unable to work since at least 6/30/02 and likely before that. His condition is not reversible and is likely to be progressive and I consider him fully and permanently disabled.

10  AR 852.

11  **C.      Relevant Testimony from the Hearing.**

12          **1.      Dr. Arvin Klein–Medical Expert.**

13          Dr. Klein, who is Board Certified in internal medicine, reviewed Waldon's medical file and

14  found he had a history of diabetes mellitus, hypertension and substance abuse with a history of

15  noncompliance.  AR 27-28, 38-41.  He noted that in June 1999 Waldon had a physical examination at

16  the University of California, San Diego, with all normal results.  *Id.*  While Waldon refused the

17  angiogram his basic cardiac tests were all normal.  *Id.*  Dr. Klein explained that even though Waldon did

18  not comply with taking all his medications his blood sugar and blood pressure were reasonably well-

19  controlled.  *Id.*  Finally, Dr. Klein opined that Waldon did not meet or equal the criteria of any listing,

20  had no exertional limitations or postural limitations, and can sit for six hours, stand for six hours and

21  walk for six hours in an eight hour work day, and should avoid hazards.  *Id.*

22          **2.      Plaintiff.**

23          Waldon testified that various impairments prevented him from working since at least 1997.  AR

24  26, 43-51.  He testified that he broke his right wrist and had three operations on it.  AR 26.  While

25  recovering from his wrist injuries he had a stroke followed by right sided weakness.  AR 26, 43.  He has

26  used a cane since the late 1990s due to weakness on his right side.  AR 41, 45.  While he was treated at

27  UCSD for the stroke, those records are no longer available.  AR 43, 65-66.

28          Waldon was insulin-dependent due to his 1993 diagnosis of diabetes.  AR 26.  Diet and medicine

helped his diabetes. *Id.* He stopped using cocaine in 1999, after he was incarcerated. *Id.* Waldon said that he could not sustain an eight hour workday and 40 hour workweek due to his energy level and medication levels. *Id.*

### 3.   Vocational Expert.

The ALJ explained to the vocational expert Waldon's age, education, work experience and residual functional capacity, and asked if any jobs existed in the national economy through June 30, 2002 that would accommodate these parameters. AR 28. The vocational expert stated that jobs were available as an assembler, packager and garment sorter, which all required a light exertional level. AR 28-29.

### D.   <u>ALJ's Written Decision.</u>

The ALJ found that Waldon last met the insured status requirements of the Social Security Act on June 30, 2002. AR 23. He did not engage in substantial gainful activity from the alleged date of the onset of his disability, March 1, 1997, through the date last insured of June 30, 2002. *Id.*

### 1.   Rejection of Treating Physician's Opinion.

The ALJ considered and rejected Dr. Sprague's testimony that Waldon was disabled as unsupported. AR 27. Specifically, he found that Dr. Sprague failed to establish any timeline for when Waldon's alleged mental impairment and stroke began. AR 26. He found no objective evidence to support a finding of severe residuals of a stroke, and there was no evidence of testing and examination of his extremities. *Id.* While Waldon has an extensive history of severe alcohol and cocaine abuse during the insured period, there is no evidence this prevented him from doing all work. *Id.* The ALJ found no significant increase or change in prescribed medication, indicative of an uncontrolled condition. *Id.*

Further, the ALJ said that Dr. Sprague's conclusion that Plaintiff is "disabled" and "unable to work" is not a medical opinion but an administrative finding that is dispositive of a case. AR 27. Those statements require familiarity with the *Dictionary of Occupational Titles* and are decisions reserved for the Commissioner. *Id.* He disagreed with the number of ailments that Waldon suffered from through the date last insured. AR 23. The ALJ also found that the record did not support Dr. Sprague's opinion that Waldon is incapable of all work. AR 27.

The ALJ instead relied on opinion evidence from the State's consulting physicians to support his conclusion that Waldon is not incapable of all work.  Regarding the physical impairments, on October 7, 2008, Steven G. Steinberg, a State cardiology consultant, reported that Waldon had nonsevere diabetes and hypertension, and insufficient evidence to document the severity of his alleged coronary artery disease during the insured status period.  AR 27.  Robert Hoskins, M.D., affirmed this opinion on March 4, 2009.  *Id.*  He also relied on the opinion of the medical expert, Dr. Klein.  AR 27-28, 38-41.

Regarding the mental impairments, on October 17, 2008, Sonia Tyutyulkova, M.D., a State psychiatric consultant, found that the objective medical evidence showed insufficient evidence that Waldon had a medically determinable mood disorder or drug addiction.  AR 27, 355-368.  But she also noted that there were no treatment records from prior to 2008, so she did not have enough evidence to determine the severity of any mood disorder.  AR 370.  She found no evidence to support the allegation of PTSD.  *Id.*  Her opinion was affirmed by Bruce Eather, Ph.D. and again by Robert Hoskins, M.D. AR 27, 377-378.

Ultimately, the ALJ found that during the time period in question, Waldon had severe diabetes mellitus, hypertension and substance abuse disorder.  *Id.*  In sum, the ALJ disagreed with Dr. Sprague that Waldon also had significant numbness in his thighs with severe pain (meralgia paresthetica), distant history of a stroke with chronic right lower extremity numbness and mild weakness, high blood pressure, high cholesterol, obstructive sleep apnea, obesity, depression and PTSD symptoms.  *See* AR 852.  He also disagreed with Dr. Dicampli's 1998 diagnosis of probable coronary disease.  AR 24, 271.

## 2.    Rejection of Plaintiff's Testimony.

The ALJ found that while Waldon's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his testimony regarding the intensity, persistence and limiting effects of his symptoms was not credible to the extent it conflicted with the residual functional capacity assessment.  AR 26.  He found that the record of reports from the treating and examining practitioners did not document any objective clinical findings that established Waldon could not work.  *Id.*

Despite the wide variety of impairments Waldon alleged, the ALJ found that he did not establish a timeline for when these impairments began, specifically with regard to the allegations of stroke and mental impairments.  AR 26.  No objective evidence supported a finding of severe residuals of stroke,

1    and there was no evidence of specific testing and examination of extremities.  AR 26.  Even though

2    Waldon had an extensive history of alcohol and cocaine abuse during the time period, there was no

3    evidence that this prevented him from working.  AR 26.  Waldon did not describe side effects from his

4    medications that would prevent him from engaging in substantial gainful activity.  *Id.*  Ultimately, the

5    ALJ concluded that Waldon's allegations of disabling pain were out of proportion with the record.  AR

6    27.

7                            **3.     Determination of Non-Disability.**

8            The ALJ found that through the date last insured Waldon could not perform any past relevant

9    work as a manufacturer's service technician, sales associate or truck driver.  AR 28.  As for his Residual

10   Functional Capacity (RFC),[1] the ALJ concurred with the RFC assessment by Dr. Klein, and found that

11   Waldon "had no exertional limitations and no postural limitations and is able to sit for six hours, stand

12   for six hours, and walk for six hours in an eight hour workday, but should avoid hazards."  AR 27-28.

13   He said he could perform a full range of work with these nonexertional limitations: mild restrictions of

14   activities of daily living, moderate difficulties maintaining social functioning, and mild difficulties

15   maintaining concentration, persistence or pace, and the need to avoid hazards.  AR 25.  Ultimately, the

16   ALJ found that Waldon was not disabled and that there were a significant number of jobs with light

17   exertional levels available in the national economy through the date last insured.  AR 29.

18   **II.     DISCUSSION**

19           **A.     Evaluating Social Security Disability Claims.**

20           To qualify for disability benefits under the SSA, an applicant must show that he or she cannot

21   engage in any substantial gainful activity because of a medically determinable physical or mental

22   impairment that has lasted or can be expected to last at least 12 months.  42 U.S.C. § 423(d).  The Social

23   Security regulations establish a five-step sequential evaluation for determining whether an applicant is

24   disabled under this standard.  20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*,

25   359 F.3d 1190, 1194 (9th Cir. 2004).

26           First, the ALJ must determine whether the applicant is engaged in substantial gainful activity.

27   20 C.F.R. § 404.1520(a)(4)(I).  If not, then the ALJ must determine whether the applicant is suffering

28
     _____

             [1]The RFC is the most an individual can still do despite his or her limitations.  S.S. Ruling 96-8p.

1    from a "severe" impairment within the meaning of the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If

2    the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of

3    Impairments" in the Social Security regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the applicant's

4    impairment meets or equals a Listing, he or she must be found disabled.  *Id.*  If the impairment does not

5    meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual

6    functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the

7    applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant

8    can perform any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

9         While the applicant carries the burden of proving eligibility at steps one through four, the burden

10   at step five rests on the agency.  *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).  Applicants not

11   disqualified at step five are eligible for disability benefits.  *Id.*

12        Here, at Step 1 the ALJ determined that Waldon was not engaged in any substantial gainful

13   activity.  AR 23.  At Steps 2 and 3, the ALJ found that Waldon did not suffer from an impairment or

14   combination of impairments that met or medically equaled one of the impairments in the Social Security

15   Regulations.  AR 24; *see* 20 C.F.R. 404.1520(d)).  Moving on to Step 4, the ALJ found that Waldon had

16   the residual functional capacity to perform a full range of work at all exertional levels but with these

17   nonexertional limitations: he had mild restrictions of activities of daily living, moderate difficulties

18   maintaining social functioning, and mild difficulties maintaining concentration, persistence or pace, and

19   needed to avoid hazards.  AR 25.  Alternatively, the ALJ found that Waldon could be limited to light

20   exertional work with the same restrictions.  *Id.*  Finally, at Step 5 the ALJ found that Waldon could work

21   in a significant number of jobs in the national economy at the time he was last insured.  AR 29.

22        **B.    Standard of Review Regarding Substantial Evidence.**

23        The SSA provides for judicial review of a final agency decision denying a claim for disability

24   benefits.  42 U.S.C. § 405(g).  A reviewing court must affirm the denial of benefits if the agency's

25   decision is supported by substantial evidence and applies the correct legal standards.  *Id.*, *Batson v.*

26   *Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence

27   means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

28   *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  If the evidence is susceptible to more than

1    one reasonable interpretation, the agency's decision must be upheld.  *Batson*, 259 F.3d at 1193.  Further,

2    when medical reports are inconclusive, questions of credibility and resolution of conflicts in the

3    testimony are the exclusive functions of the agency.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

4    1989).   The reviewing court cannot reinterpret or re-evaluate the evidence however much a re-

5    evaluation may reasonably result in a favorable outcome for the plaintiff.  *Batson*, 259 F.3d at 1193.

6          Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the

7    final agency decision reviewed by the court.  *Id.* at 1193 n.1.

8          **C.**    <u>**Assertion of Error.**</u>

9          In challenging the ALJ's denial of benefits, Waldon argues that the ALJ erred by failing to 1)

10   give specific and legitimate reasons for rejecting the opinions of Dr. Sprague, Waldon's treating

11   physician; and 2) give clear and convincing reasons for rejecting Waldon's testimony.

12              **1.**        **The ALJ's Rejection of Treating Physician's Opinion.**

13                  **a.**      ***Legal Standard.***

14         Where a treating doctor's opinion is not contradicted by another doctor, the commissioner can

15   only reject the treating doctor's opinion for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d

16   821, 830 (9th Cir. 1995.)  Where the treating doctor is contradicted by another doctor, the commissioner

17   must provide "specific and legitimate" reasons based on "substantial evidence" in order to properly

18   reject a treating physician's opinion.  *Id.* at 830-831.  The opinion of an examining physician alone can

19   constitute "substantial evidence" because it rests on an independent examination.  *Tonapetyan v. Halter*,

20   242 F.3d 1144, 1149 (9th Cir. 2001).  Moreover, "When confronted with conflicting medical opinions,

21   an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by

22   clinical findings." *Id.*.  Finally, the  "ALJ is the final arbiter with respect to resolving ambiguities in the

23   medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008.)

24         A failure to properly consider the treating opinion is reversible error.  *Lester v. Chater*, 81 F.3d

25   821, 829-830 (9th Cir. 1995).

26              **b.**      ***Whether the ALJ Cited Specific and Legitimate Reasons for Rejecting***
                           ***Dr. Sprague's Opinion.***

27

28         Waldon argues that the ALJ ignored portions of Dr. Sprague's opinion and failed to articulate a

9

1    legally sufficient rationale for rejecting those ignored portions.  First, he says that the ALJ simply rejects

2    Dr. Sprague's opinion that Waldon is disabled on the basis that it is not a medical finding but an

3    administrative decision on an issue reserved to the Commissioner, and argues that the ALJ's rationale

4    does not constitute a specific and legitimate reason for rejecting the opinion.  Second, he argues that the

5    ALJ rejects Dr. Sprague's opinion and instead favors the opinions of non-treating physicians, some of

6    whom do not explain the bases for their conclusions.  Third, because the record does not contain any

7    independent examinations, and the non-examining doctors relied on the same clinical findings as the

8    treating doctors, Waldon argues the opinions of those  reviewing doctors cannot constitute substantial

9    evidence.

10                        *i.*        ***Dr. Sprague's opinion that Waldon is disabled.***

11          The ALJ rejected the "statements that a claimant is 'disabled', 'unable to work' [and] can or

12   cannot perform a past job" because they "are not medical opinions but are administrative findings

13   dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein and

14   in the *Dictionary of Occupational Titles*."  AR 27.  First, this court finds  that Dr. Sprague was not

15   trying to make an administrative decision but rather was offering her opinion.  She couched her

16   statements with, "In my opinion, he was unable to work . . ." and "I consider him fully and permanently

17   disabled," and therefore, she was not trying to substitute in her opinion for a definitive administrative

18   decision.  AR 852.

19          Second, the ALJ's rejection of her "administrative opinion" is not supported by specific and

20   legitimate reasons, and cannot serve to reject all of Dr. Sprague's clinical findings and evidence as to the

21   nature and severity of Waldon's impairments.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)

22   (finding the ALJ could not reject the physicians' uncontroverted opinion on the ultimate issue of

23   disability without citing to clear and convincing reasons).  The court notes that the ALJ's rejection of

24   Dr. Sprague's conclusion simply highlights that the determination of whether Waldon is "disabled" is

25   left to the Commissioner.  *See* 20 C.F.R. 404.1527(d)(2).

26                        *ii.*       ***Opinions of non-treating and non-examining physicians as to***
                                      ***physical impairments.***

27

28          Reliance on the opinions of non-treating physicians can constitute specific and legitimate reasons

1    to reject a treating doctor's opinions.  *Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir. 1999).  But "[a]

2    report of a non-examining, non-treating physician should be discounted and is not substantial evidence

3    when contradicted by all other evidence in the record."  *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th

4    Cir. 1984) (internal quotations omitted).

5           Here, the treating physician, Dr. Sprague, found that Waldon suffered from these physical

6    impairments:  diabetes with significant peripheral neuropathy in his feet,[2] significant numbness in his

7    thighs with severe pain (meralgia paresthetica),[3] distant history of a stroke with chronic right lower

8    extremity numbness and mild weakness, high blood pressure, high cholesterol, obstructive sleep apnea,

9    obesity, depression and PTSD symptoms.  AR 852.  The ALJ compared these diagnoses with the

10   conclusions drawn from non-treating and non-examining doctors who reviewed Waldon's medical

11   records.

12          The ALJ first cited to Dr. Steinberg, the State cardiology consultant, who concluded:

13                 Claimant's diabetes is a non-severe impairment.

14                 Claimant's HBP [high blood pressure] is a non-severe impairment.

15                 There is insufficient evidence to evaluate the severity of claimant's
                   "coronary disease" during the relevant period (3/1/97-6/30/02).  The sole
16                 MER from UCSD indicates that the claimant signed out AMA prior to any
                   documentation (by cathererization) of his disease.

17

18   AR 351.  Dr. Hoskins, another reviewing physician, affirmed Dr. Steinberg's findings.  Dr. Klein, the

19   medical expert, found that Waldon had a history of diabetes mellitus, hypertension and substance abuse

20   with a history of noncompliance.  AR 27-28, 38-41.  In sum, the ALJ agreed with Drs. Sprague,

21   Steinberg and Klein that Waldon suffered from diabetes, high blood pressure (hypertension) and

22   substance abuse.

23          Regarding coronary disease, Dr. Sprague did not specifically diagnose Waldon with coronary

24

25          [2]"Peripheral neuropathy is damage to nerves of the peripheral nervous system, which may be
     caused either by diseases of or trauma to the nerve or the side effects of systemic illness."  Definition on
26   Wikipedia, *available at* http://en.wikipedia.org/wiki/Peripheral_neuropathy, *last visited April 18, 2013.*

27          [3]Meralgia paresthetica "is numbness or pain in the outer thigh not caused by injury to the thigh,
     but by injury to a nerve that extends from the thigh to the spinal column."  Definition on Wikipedia,
28   *available at* http://en.wikipedia.org/wiki/Meralgia_paraesthetica, *last visited April 18, 2013.*

1  disease.  The only ailment she lists related to the heart is "high cholesterol."  Only Dr. Dicampli, who

2  examined Waldon in 1998, diagnosed him with "probable coronary disease."  AR 271.  Dr. Klein

3  reviewed all notes regarding any medical issues with the heart, and noted that in June 1998 Waldon had

4  a physical examination at the University of California, San Diego, with all normal results.  AR 27-28,

5  40.  Further, while Waldon refused the angiogram, his basic cardiac tests were all normal.  *Id.*  The court

6  finds, therefore, that to the extent Waldon claims he suffers from coronary disease, the lack of a

7  diagnosis by his treating physician combined with the little documented evidence of "coronary disease"

8  that Dr. Steinberg noted and the record of all basic cardiac tests being "normal," constitute specific and

9  legitimate reasons for the ALJ to reject Waldon's claim that he suffers from coronary disease.

10      The remaining physical impairments for which Dr. Sprague's conclusions are not contradicted

11  by another doctor are:  significant numbness in thighs with severe pain (meralgia paresthetica), distant

12  history of a stroke with chronic right lower extremity numbness and mild weakness, obstructive sleep

13  apnea and obesity.  Dr. Klein did not acknowledge that Waldon suffered from these impairments.  He

14  simply addressed the diabetes, hypertension and substance abuse and opined that Waldon did not meet

15  or equal the criteria of any listing and had no exertional limitations or postural limitations.  Because

16  these opinions are not contradicted by other doctors, the ALJ can reject them for only clear and

17  convincing reasons.  *Lester*, 81 F.3d at 830.

18      Regarding the diagnosis of distant history of stroke, the ALJ noted there was no evidence of

19  testing and examination of his extremities for residuals of the stroke.  AR 26.  Waldon has not provided

20  or cited to any evidence of such testing.[4]  The court, therefore, finds the lack of testing and evidence

21  from the relevant time period to be a clear and convincing reason to reject that diagnosis.

22      As for the remaining physical impairments, the only medical evidence comes from examinations

23  by the treating physician, Dr. Sprague.  Those clinical findings were reviewed by the reviewing doctors,

24  namely, Drs. Steinberg, Hoskins, and Klein.  But preference for the findings of the reviewing doctors

25  alone cannot constitute substantial evidence:

26  / / /

27

28      [4]It appears Waldon tried to obtain the UCSD records regarding the stroke but they were not
    available.  AR 43, 65-66.

12cv1323 AJB (NLS)

1
2
3
4
5
6

> When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence." . . . By contrast, when an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are "substantial evidence." Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered.

7 *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (internal quotations omitted).

8    Defendant does not point to any findings based on objective medical tests or to any conflicting

9 medical tests that the treating physician did not consider in making her diagnoses. The non-examining,

10 non-treating physicians looked at the same clinical findings that the treating physician looked at and

11 they differed only in their conclusions. Yet the ALJ "assigned significant weight to the State medical

12 consults' opinions with regard to the claimant's lack of severe physical impairment . . . because they

13 were based on a thorough review of the evidence and familiarity with Social Security Rules and

14 Regulations and the legal standards set forth therein." AR 27.

15    The court finds that the ALJ did not give Dr. Sprague's opinion the deference it deserved. The

16 factors set forth in 20 C.F.R. § 404.1527(c) increase the weight that should be afforded to Dr. Sprague's

17 opinions. Dr. Sprague treated Waldon for over nine years, from December 2000 through March 2009.

18 AR 289-348; 380-852. She therefore "obtained a longitudinal picture" of Waldon's impairment that the

19 nonexamining and reviewing physicians did not possess. 20 C.F.R. § 404.1527(c)(2)(i). Contrary to the

20 ALJ's conclusion, the record contains several hundred pages detailing clinical tests and referrals and

21 treatment by several specialists including neurologists, endocrinologists, urologists and psychiatrists.

22 *See* AR 852. The only other medical opinions on which the ALJ relies are those of non-treating and

23 non-examining physicians who did not have any relationship with Waldon and simply reviewed his

24 medical records.

25    This court finds that the ALJ did not properly defer to the opinion of the treating physician as

26 required by 20 C.F.R. § 404.1527 with regard to the physical impairments of significant numbness in

27 thighs with severe pain (meralgia paresthetica), obstructive sleep apnea and obesity. The ALJ cannot

28 simply exclude a physician's testimony for lack of objective evidence as the ALJ did here; rather, the

1   "ALJ must evaluate the physician's assessment using the grounds on which it is based."  *Orn*, 495 F.3d

2   at 635.  The ALJ failed to do so here.

3                              ***iii.    Opinions of non-treating and non-examining physicians as to***
                                          ***mental impairments.***

4

5          In examining the mental impairments, the ALJ cited to a "check the box" form by Dr.

6   Tyutyulkova, a State psychiatric consultant, who found that the objective medical evidence showed

7   insufficient evidence that Waldon had a medically determinable mood disorder or drug addiction.  AR

8   27, 355-368.  Dr. Eather and Dr. Hoskins affirmed her opinion.  AR 27, 377-378.  But at the end of the

9   form, Dr. Tyutyulkova said she did not review any treatment records from before 2008.  AR 370.  She

10  suggested obtaining old treatment records, including the correctional record, for the time period between

11  the alleged onset of disability on March 1, 1997 through the date last insured, June 30, 2002.  AR 370.

12         In spite of Dr. Tyutyulkova never looking at any medical record from the relevant time period

13  the ALJ relied on her opinion to reject Dr. Sprague's conclusions that Waldon suffered from depression

14  and PTSD.  Dr. Tyutyulkova's opinion is unreliable, though, for at least two reasons.  First, she did not

15  evaluate records from the time period in question, March 1, 1997 to June 30, 2002, and, at least one

16  record from a consulting psychologist–Dr. Gonzales, who evaluated Waldon on February 7, 2001–noted

17  that Waldon suffered from major depression and posttraumatic stress.  AR 816.  Dr. Gonzales referred

18  Waldon to chemical addictions rehabilitation, PTSD orientation class, anger management classes and

19  individual psychotherapy treatment.  AR 816-817.  Dr. Tyutyulkova did not consider that evidence in

20  her review.  Second, Dr. Tyutyulkova's opinion is filled out in a "check the box" form.  Such forms are

21  given less weight than detailed reports that explain the bases for a doctor's conclusions.  *Crane v.*

22  *Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).

23         With regard to the mental impairments, the court finds that the ALJ did not properly defer to the

24  opinion of the treating physician as required by 20 C.F.R. § 404.1527.  *Orn*, 495 F.3d at 632.  Further,

25  there are no specific and legitimate reasons based on Dr. Tyutyulkova's review to reject Dr. Sprague's

26  findings that Waldon suffered from depression and PTSD.

27         This court therefore finds that remand is appropriate because the ALJ erred by not duly

28  considering the treating physician's opinion and not relying on specific and legitimate reasons to reject

that opinion.  On remand, the ALJ must provide due consideration to Dr. Sprague's findings and

opinions with regard to these impairments:  diabetes, high blood pressure (hypertension), substance

abuse,[5] significant numbness in thighs with severe pain (meralgia paresthetica), obstructive sleep apnea,

obesity, depression and PTSD.

### 2.    Rejection of Plaintiff's Testimony.

In rejecting Waldon's testimony, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of
> these symptoms are not credible to the extent they are inconsistent with
> the above residual functional capacity assessment.

AR 26.

Waldon argues that his testimony shows he can do nothing more than a few basic daily activities.

AR 42-54.  He contends the ALJ improperly assessed his subjective testimony when determining his

RFC and failed to give clear and convincing reasons for disregarding his testimony as to the limitations

caused by his pain and fatigue.

### a.    *Legal Standard.*

A claimant's subjective symptoms must be considered in a disability evaluation.  20 C.F.R. §

404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996).  In deciding whether to credit a

claimant's testimony about subjective symptoms or limitations, the ALJ must engage in a two-step

analysis.  *Batson*, 359 F.3d at 1195; *Smolen*, 80 F.3d at 1281.  Under the first step, the claimant must

produce objective medical evidence of an underlying impairment that could reasonably be expected to

produce pain or other symptoms.  *Batson*, 359 F.3d at 1195; *Smolen*, 80 F.3d at 1281.  If this test is

satisfied, and there is no affirmative evidence that the claimant is malingering, then the ALJ must

determine the credibility of the claimant's subjective complaints.

In assessing the credibility of the claimant's subjective complaints, the ALJ may consider such

factors as the claimant's reputation for truthfulness, any inconsistencies in the claimant's statements,

---

[5]The court notes that the ALJ already determined that Waldon suffers from diabetes, high blood pressure and substance abuse, and asks the ALJ to reconsider the impact of those diseases in combination with the other diagnoses that must be reconsidered on remand.

1    and the claimant's daily activities.  *Tonapetyan*, 242 F.3d at 1148; *Smolen*, 80 F.3d at 1284.  The ALJ

2    may reject the claimant's testimony about the severity of symptoms as long as he gives specific,

3    convincing reasons for doing so.  *Batson*, 359 F.3d at 1195; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036

4    (9th Cir. 2007).  "General findings are insufficient; rather, the ALJ must identify what testimony is not

5    credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

6           **b.     *No Clear and Convincing Reasons Cited to Reject Plaintiff's Testimony.***

7           The ALJ did not dispute that claimant has proven impairments which could reasonably be

8    expected to produce pain and fatigue.  *See* AR 26-27.  There is no evidence of malingering here.  The

9    sole issue is whether the ALJ provided any clear and convincing reasons to reject Waldon's testimony.

10   Defendant argues that the ALJ properly discredited Waldon's testimony because it was inconsistent with

11   one of Dr. Sprague's statements, that any impairment he had was controlled, that Dr. Sprague failed to

12   establish a timeline for the onset of some of the impairments, and there was no evidence that Waldon's

13   substance abuse prevented him from working.  D's MSJ at 9.

14          First, the court finds no inconsistency between Waldon's statement that he had been disabled

15   since 1997, and Dr. Sprague's statement that Waldon "was disabled when I first evaluated him in 2000."

16   AR 852.  Dr. Sprague did not say Waldon was not disabled before 2000, just that she did not meet and

17   assess him until 2000.  Second, even though the ALJ noted there were no significant increases or

18   changes in prescribed medication to indicate an uncontrolled condition, the ALJ did not assess whether

19   the amount of medication Waldon was taking indicated an underlying disability.  While medical reports

20   showing that the pain is under control constitute specific, clear and convincing evidence to disregard

21   reports of pain, *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003), the treating physician opined that

22   Waldon's pain "limit[s] his endurance and ability to do many activities."  The ALJ cites to no clear and

23   convincing evidence to disregard Waldon's reports of pain.

24          Third, even though the ALJ says there is no timeline for when Waldon's mental impairments and

25   stroke began, Waldon did report that the stroke occurred in 1996.  AR 271.  As for lack of supporting

26   medical records, his attorney explained that the UCSD treatment records for that stroke were no longer

27   available.  AR 43, 65-66.  The court does not find the lack of available records a proper reason to

28   discredit his testimony.  Regarding the onset date for the mental impairments, in 2001 Dr. Gonzales said

1    that Waldon reported that he had been depressed since he returned from Vietnam in 1977, and at that

2    time diagnosed him with major depression, posttraumatic stress disorder, and alcohol and cocaine

3    dependence in remission.  AR 24, 86, 813-817.  Finally, while the ALJ said no evidence showed

4    Waldon's substance abuse prevented him from working, there is evidence that Waldon participated in

5    rehabilitation programs, yet the ALJ did not address whether the time commitments required to

6    participate in those programs might have interfered with his ability to work.

7         The ALJ based the finding of lack of credibility on the record's failure to document any

8    objective clinical findings that Waldon could not work.  AR 26.  But this purported justification for

9    rejecting the testimony is insufficient because an ALJ may not reject a claimant's testimony as to the

10   severity of his subjective symptoms, including pain, on the ground that no objective medical evidence

11   supports it.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006).  Further, even though

12   "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective

13   testimony," the ALJ's inadequate discussion of the medical record and failure to identify contradictions

14   within it, as well as contradictions between Waldon's testimony and the relevant medical evidence,

15   impedes the court's ability to evaluate the ALJ's credibility determination.  *See Carmickle v. Comm'r of*

16   *Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citation omitted).

17        As this court has noted, the ALJ did not give enough weight to the opinion of the treating doctor.

18   Reliance on the opinions of the non-treating and non-examining doctors do not constitute substantial

19   evidence, as they do not rely on independent examinations and do not carry the weight of the opinions

20   of the treating and examining doctors.  Reliance on these opinions cannot now serve as clear and

21   convincing reasons to discount Waldon's credibility.  The issue of Waldon's credibility should, upon

22   remand, be reexamined after proper consideration has been given to the medical evidence, including Dr.

23   Sprague's opinion.

24                                    **<u>Conclusion</u>**

25        Based on the preceding discussion, this court concludes that the ALJ's denial of benefits is not

26   supported by substantial evidence and there is no clear and convincing evidence cited to reject

27   Plaintiff's testimony.  Accordingly, the court remands this matter to the ALJ for further proceedings and

28   consideration of the record because "[t]here may be evidence in the record to which the [ALJ] can point

1   to provide the requisite" reasons for rejecting the opinion of Dr. Sprague and for discounting Plaintiff's

2   credibility.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (remanding so that the

3   Commissioner can review the record and either provide legally sufficient reasons for rejecting the

4   treating physician's report or award benefits).  The Commissioner "is in a better position than this court

5   to perform this task." *Id.*

6          Therefore, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be

7   **GRANTED** and the case **REMANDED,** and that Defendant's cross motion for summary judgment be

8   **DENIED**.

9          This Report and Recommendation is submitted to the United States district judge assigned to this

10  case pursuant to 28 U.S.C. § 636(b)(1).  Any party may file written objections with the court and serve a

11  copy on all parties on or before **May 13, 2013**.  The document should be captioned "Objections to

12  Report and Recommendation."  Any response to the objections shall be filed and served on or before

13  **May 20, 2013**.

14         Failure to file objections within the specified time may affect the scope of review on appeal.

15  *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

16         **IT IS SO ORDERED**

17  DATED:  April 26, 2013

18

19                                              Hon. Nita L. Stormes
                                                U.S. Magistrate Judge
20                                              United States District Court